IN THE U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO

JANE DOE, an individual

        Plaintiff

                             Civil Action No.: _____

    v.

CHRISTOPHER DAVID BAUM,
a.k.a. Christopher D. Baum, an individual,
3375 Lennox Village Dr., Apt. 253
Fairlawn, Ohio  44333

        Defendant

## CIVIL COMPLAINT WITH JURY DEMAND

Now comes the Plaintiff, Jane Doe, by and through counsel, filing suit against the

Defendant listed above and alleges as follows:

## PRELIMINARY STATEMENT OF THE CASE

1.      This case is based on a series of coordinated wrongful acts and omissions

committed against Plaintiff JANE DOE by Defendant CHRISTOPHER DAVID BAUM,

including – but not limited to – rape, assault/battery, intentional infliction of emotional distress,

fraud by concealment/misrepresentation, forgery/tampering with records and wire fraud.

Foremost amongst other wrongful acts and omissions, Defendant: (a) falsely informed Plaintiff

that he was free of any venereal disease when he knew he was infected with an incurable

venereal disease (i.e., herpes) for the purpose of enticing her to engage in sexual intercourse under circumstances contrary to Plaintiff's expresses wishes; (b) subsequently falsified a written blood test report so that it inaccurately reflected after the fact that Defendant was free of venereal disease; (c) sent said falsified report by means of interstate electronic communications to Plaintiff to further his false and fraudulent conduct against her; (d) engaged in unprotected sexual intercourse with the unwitting Plaintiff on repeated occasions such that, as a direct result, Plaintiff contracted an incurable, contagious, painful and stigmatizing venereal disease; and (e) forced Plaintiff on one occasion to engage in unprotected sexual intercourse against her will. A substantial number of the acts and/or omissions complained of herein occurred in or originated in Ohio, but others also occurred in the states of Massachusetts, California, Florida, New York and Michigan.

## PARTIES

2.        Plaintiff JANE DOE (hereinafter "Plaintiff"), is, and at all times mentioned herein was, an individual residing in the County of Suffolk, State of Massachusetts. "Jane Doe" is a pseudonym adopted herein in the hope it will allow Plaintiff to bring this litigation anonymously so as to protect her privacy and prevent the disclosure of her identity to the general public. By reason of the wrongful conduct of the Defendant and the very nature of her claims as alleged herein, private and intimate details about Plaintiff's life – including having both contracted an incurable, contagious, painful and stigmatizing venereal disease from Defendant – otherwise will be disclosed in a public forum. Defendant knows the true identity of Plaintiff and using a pseudonym is not intended shield her identity from him but to limit the scope of the harms already caused by Defendant, including both her personal and professional reputations.

Contemporaneously hereto, Plaintiff has filed her "Motion for Protective Order and Leave to Proceed Under a Pseudonym (with Brief in Support)".

3.     Plaintiff is informed and believes and thereby alleges that Defendant CHRISTOPHER DAVID BAUM, also known as Christopher D. Baum (hereinafter "Defendant" or "Baum"), is, and at all times mentioned herein was, an individual maintaining his primary residence in the State of Ohio, initially in the County of Stark and more recently in the County of Summit.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction for this case pursuant to 28 U.S.C. § 1332(a) because: (a) the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs; and (b) Plaintiff and Defendant are citizens of different states being, respectively, Massachusetts and Ohio.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in this district where Defendant resides.

## FACTUAL ALLEGATIONS

6.     At all times mentioned herein Plaintiff was the founder and operator of a public relations headquartered in Massachusetts. Plaintiff has many years of experience working in the field of public relations and related communication businesses both nationally and internationally.

7.     On or about June 4, 2018, Plaintiff met Defendant. Plaintiff was attending an annual conference as the long term representative of the trade association that was hosting the conference. Defendant attended the conference as a member of the same association.

3

8.      Defendant immediately began to pursue a romantic relationship with Plaintiff. Plaintiff emphasized to Defendant her strong Christian faith and stressed to him that she was searching for her soul mate as a part of any personal relationship at this point in her life. Defendant claimed to share the same faith and commitment in a personal relationship, asserting he was looking to share with Plaintiff a "last first kiss".  Defendant also expressed his strong desires to become a part of the national entertainment industry, in which Plaintiff had extensive contacts and experience.  For example, as early as June 6, 2018, Defendant forwarded a "treatment" or outline for a prospective television show to Plaintiff hoping she would agree to help him develop it.

9.      Plaintiff was initially very cautious about entering a romantic relationship with Defendant.  As of that June, Plaintiff had not been in a romantic or intimate relationship for more than twelve years – and she informed Defendant that she was only interested in finding the right man with which to be intimate and to marry.

10.      Defendant knowingly misrepresented to Plaintiff when he told her that he was not seeing anyone else romantically and when he told her that he was looking for an exclusive romantic relationship leading to marriage with Plaintiff.

11.      Defendant continued to pursue Plaintiff and before the end of the conference was professing his love to her.  At the end of the conference Plaintiff and Defendant agreed to stay in touch.

12.      Later that same month, from their respective home states, Plaintiff and Defendant began pursuing a professional relationship as well as the beginnings of a more intimate, personal relationship.

4

13.    Throughout their personal relationship (as detailed below), Plaintiff not only actively assisted Defendant in pursuing his desires to become a part of the national entertainment industry, but also promoted Defendant in his pursuit of a leadership role in the aforementioned trade association.  Plaintiff not only successfully arranged introductions and /or roles in national entertainment industry projects for Defendant, his daughter and his ex-wife, but also actively supported Defendant in his ultimately successful bid to join the governing body of the aforementioned trade association.

14.    After the parties began their relationship, Defendant on numerous occasions knowingly misrepresented to Plaintiff that he was an honest person who would never lie to her and that he loved her and "would protect your [Plaintiff's] heart", etc.  Defendant further knowingly misrepresented himself to Plaintiff that he was a successful businessman "living a God centered life," etc.

15.    On or about June 9, 2018, Defendant contacted Plaintiff with news that he loved her and was coming to see her in Massachusetts for a few days beginning on June 22, 2018.  A few days later he called again about his visit and specifically inquired about the parties being physically intimate during this visit.

16.    At that time Plaintiff made it clear to Defendant that before they could consider being physically intimate he needed to be tested for sexual transmitted diseases and share the results with her before he arrived in Massachusetts.  At this same time Defendant and Plaintiff also agreed that if Defendant's test results showed no sign of sexual transmitted disease, the parties could continue to pursue an exclusive intimate relationship with the goal of marriage; both parties further specifically agreed not to have sexual contact with any other party while they

5

pursued a personal relationship with one another.  Defendant agreed to take the aforementioned test and to abide by all of the other conditions recited in this paragraph.

17.     Plaintiff was free of venereal disease at the time she contemplated and began her intimate relationship with Defendant and, on her part, did not have sexual contact with anyone else during her relationship with Defendant.

18.     On or about June 13, 2018, Defendant submitted to a blood test for sexual transmitted diseases as Plaintiff had requested.

19.     On or about June 19, 2019, Defendant verbally received the results of his blood test and soon thereafter received a written copy of said test results (hereinafter "Original Baum Report"), which indicated he was not free of venereal disease.  Rather, the Original Baum Report revealed that Defendant not only had Herpes Simplex II, an incurable and contagious venereal disease (hereinafter "herpes"), but also that Defendant had been so infected with herpes for a considerable period of time.

20.     On or about this same time, Defendant called Plaintiff at which time he affirmatively, intentionally and falsely represented to her that he had received word from his doctor and that he (the Defendant) was "free and clear of any venereal disease."  Contrary to their agreement and knowing that Plaintiff would not engage in sexual intercourse with him if she knew he was infected with herpes or any other sexually transmitted diseases, Defendant did not share the true results of the Original Baum Report with Plaintiff or otherwise reveal the true results of his blood test for venereal diseases before he visited Plaintiff later that June.

21.     Throughout June of 2019 Defendant continued to press Plaintiff to marry him and also to help promote his entertainment industry ambitions.

6

22.     On or about June 22, 2018, in Massachusetts, Plaintiff and Defendant had unprotected sexual intercourse for the first time. Defendant did not first warn Plaintiff that he was infected with herpes.

23.     In the days that followed during Defendant's June visit to Massachusetts, Plaintiff and Defendant again engaged in unprotected sexual intercourse. Again, Defendant did not first warn Plaintiff that he was infected with herpes.

24.     On or about June 26, 2018, as a follow up to earlier communications about getting together again, Defendant knowingly misrepresented to Plaintiff via a text declaring "the fact we are both free of any sort of infections and diseases and we can be care free", all the while knowing he was infected with herpes and that he was knowingly putting an unsuspecting Plaintiff at risk of contracting that incurable disease from Defendant.

25.     On or about July 9, 2018, in Cleveland, Ohio, Plaintiff and Defendant again met and engaged in unprotected sexual intercourse. Again, Defendant did not first warn Plaintiff that he was infected with herpes.

26.     On or about July 10, 2018 through early July 14, 2018, in Mackinaw, Michigan, Plaintiff and Defendant again engaged in unprotected sexual intercourse on several occasions, but on each occasion, Defendant again did not first warn Plaintiff that he was infected with herpes.

27.     On or about July 15, 2018, in Cleveland, Ohio, Plaintiff and Defendant again engaged in unprotected sexual intercourse. Again, Defendant did not first warn Plaintiff that he was infected with herpes.

28.     On or about July 21, 2018 through July 23, 2018, in Boston, Massachusetts, Plaintiff and Defendant again engaged in unprotected sexual intercourse on several occasions,

but on each occasion, Defendant again did not first warn Plaintiff that he was infected with herpes.

29.     On or about August 9, 2018 through August 12, 2018, in Boston, Massachusetts, Plaintiff and Defendant again engaged in unprotected sexual intercourse on several occasions, but on each occasion, Defendant again did not first warn Plaintiff that he was infected with herpes.

30.     On or about August 19, 2018 through August 23, 2018, in Canton, Ohio, Plaintiff and Defendant again engaged in unprotected sexual intercourse on several occasions, but on each occasion, Defendant again did not first warn Plaintiff that he was infected with herpes.

31.     On or about August 28, 2018 through August 31, 2018, in St. Augustine, Florida, Plaintiff and Defendant again engaged in unprotected sexual intercourse on several occasions, but on each occasion, Defendant again did not first warn Plaintiff that he was infected with herpes.

32.     On or about September 10, 2018, Defendant was elected to the board of directors for the aforementioned trade association, which was and remains Plaintiff's largest client. By reason of said election Defendant gained authority over all aspects of the association and in the coming months began to "remind" Plaintiff of his power over her and her business relationship with the association. These "reminders" escalated and became more threatening and coercive throughout the remainder of their relationship until Defendant left the association.

33.     On or about September 14, 2018 through September 15, 2018, in Boston, Massachusetts, Plaintiff and Defendant again engaged in unprotected sexual intercourse on several occasions, but on each occasion, Defendant again did not first warn Plaintiff that he was infected with herpes.

34.     On or about October 5, 2018 through October 6, 2018, in Geneva, New York, Plaintiff and Defendant again engaged in unprotected sexual intercourse on several occasions, but on each occasion, Defendant again did not first warn Plaintiff that he was infected with herpes.

35.     On or about October 11, 2018 through October 13, 2018, in southern California, Plaintiff and Defendant again engaged in unprotected sex on several occasions, but on each occasion, Defendant again did not first warn Plaintiff that he was infected with herpes.

36.     After having engaged in sex with Defendant on October 13, 2018, Plaintiff noticed and inquired about a red and white blemish on Defendant's penis. Defendant knowingly misrepresented to Plaintiff that the blemish "was nothing" and, based on his assurances and many prior misrepresentations, she did not immediately suspect it was a symptom of a sexually transmitted disease.

37.     Late on October 14, 2018 or early October 15, 2018, in Oxnard, California, Defendant physically forced Plaintiff to engage in rough unprotected sexual intercourse against her will and over her verbal protests and physical efforts to resist him. In addition to thus raping Plaintiff, Defendant again engaged in sexual intercourse without warning Plaintiff that he was infected with herpes. As a result of this rape, Plaintiff ended the hotel booking early. As the parties left the hotel that morning, Plaintiff told Defendant "you know you really hurt me Chris" to which Defendant replied "I know, but you'll get over it". This was the last time the parties engaged in any sort of sexual intercourse.

38.     On or about October 16, 2018, Plaintiff returned to her home in Massachusetts and immediately contacted both her neighbor (a licensed mental health counselor who has worked with both victims and perpetrators of interpersonal violence for over 15 years) and

another friend (who works in law enforcement) about the rape that occurred the prior day in California.

39.     On or about October 17, 2018 and October 18, 2018, Plaintiff sought and received medical treatment for certain injuries sustained during the aforesaid rape. This included Plaintiff being treated for vagina tears and bruising. As a part of her medical treatment at this time, Plaintiff was administered a test for sexually transmitted disease.

40.     On or about October 19, 2018, Plaintiff received the results of her first test, which was positive for herpes. Plaintiff immediately informed Defendant that she had tested positive for herpes. During this same communication, Plaintiff pressed Defendant to share a copy of the Original Baum Report with her. In response, Defendant knowingly misrepresented to Plaintiff via text that: "I'm freaking out. Just called my doctor to confirm and no sign of it came up in my tests. On phone with doctor now."

41.     At about this same time, Plaintiff experienced her first herpes outbreak, which outbreak was particularly severe and lasted more than a month.

42.     Beginning October 19, 2018 through October 29, 2018, Plaintiff pressed Defendant every day for an explanation as well as a copy of the Original Baum Report. During this same period, Defendant knowingly tried to further mislead Plaintiff by continuing to describe the Original Baum Report results as "clean" or some kind of "false positive" and other statements designed to further misdirect Plaintiff or even make her belief she was the source of the infection.

43.     On or about October 24, 2018, Plaintiff requested and received a second and broader spectrum test for sexually transmitted diseases.

44.     On or about October 29, 2018, Plaintiff learned that this second test confirmed that she was positive for herpes and, furthermore, based on the level and type of antibodies present, that the infection had been contracted recently.

45.     Knowing that she had not engaged in any sexual relations in more than twelve years except with Defendant beginning on or about June 22, 2019, Plaintiff then concluded she had been recently infected by Defendant.

46.     On or about October 29, 2018, Plaintiff had extended communications with Defendant regarding his infecting her with herpes and Plaintiff repeatedly demanding a copy of the Original Baum Report.  At one point during this discourse, Defendant responded with the following text regarding the infection: "I love you too and feel horrendous and embarrassed and dirty that it was me who ruined your story."

47.     Plaintiff continued to press Defendant for the Original Baum Report and (based on his repeated denials about the Original Baum Report) for Defendant to take a new test for venereal diseases.  Defendant knowingly misrepresented to Plaintiff that he would take another test, but based on Plaintiff's best information and belief Defendant did not take another test as he had agreed and represented to her he would do.  In any event, Plaintiff did not receive the results of any new testing from Defendant.

48.     On or about November 2, 2019, in response to another urgent request from Plaintiff (who was still suffering severely from her first herpes outbreak) for an email copy of the Original Baum Report, Defendant knowingly misrepresented to Plaintiff that he was literally on the telephone with his doctor about the results of said test; Defendant continued to deny he had tested positive for herpes and again reported his doctor had reaffirmed the negative results supposedly reported on the Original Baum Report.

11

49.     On or about November 5, 2018, Plaintiff discovered for the first time that unbeknownst to her Defendant: (a) had been engaged in an extended intimate sexual relationship with at least one other women throughout the period Plaintiff and Defendant had been engage in their relationship; (b) reportedly had also infected said other women with herpes; and (c) reportedly had also infected yet another women with herpes as early as January of 2018.

50.     On or about November 5, 2018 and November 6, 2018, Plaintiff and Defendant communicated repeatedly by text messages.  Amongst other things, Plaintiff strongly demanded Defendant produce the Original Baum Report and confirm a date certain for the new test he had already agreed to take; to which Defendant knowingly misrepresented to Plaintiff via text: "I'll show you am going for the other test this morning."

51.     By this time Defendant knew that:

a.    Plaintiff would not have begun an intimate relationship or engaged in sexual intercourse with Defendant if she know he was infected with an incurable venereal disease; and/or

b.    Plaintiff would not continue or renew their personal relationship if Defendant revealed the true results of the Original Baum Report to her; and/or

c.    Plaintiff would not continue to support Defendant in his pursuit of a career in the entertainment industry; and/or

d.    Plaintiff would not continue to support Defendant's role as a leader of the aforementioned trade association,

As a result and in an effort to continue his relationship with Plaintiff, Defendant then took steps in Ohio to alter and otherwise create a false version of the Original Baum Report which

12

inaccurately portrayed Defendant as being free of venereal disease (hereinafter "Altered Report").

52.     Plaintiff decided to end her various relationships with Defendant.

53.     On or about November 6, 2018 and in the hope of salvaging his relationship with Plaintiff, Defendant (who was then in Ohio) sent the Altered Report by means of interstate electronic communications and otherwise made further misrepresentations to Plaintiff (who was then in Massachusetts) for the purpose of enticing her to continue their relationship and otherwise avoid responsibility for all of his prior misconduct towards her.

54.     On or about that same time and notwithstanding her receipt of an electronic copy of the Altered Report, Plaintiff confirmed to Defendant that their relationship (both personal and professional) was over.

55.     Plaintiff reasonably relied upon the many and varied misrepresentations of Defendant, all to her detriment.

56.     As a result of engaging in sexual intercourse with Defendant, Plaintiff developed physical symptoms of herpes -- including irritation and lesions in the vaginal area and was medically diagnosed with herpes.

57.     As a result of being subsequently diagnosed with herpes, which is known to be contagious and incurable, Plaintiff has suffered physical and mental distress, pain from vaginal lesions, and mental stress, strain and upset from having contracted the disease. Plaintiff has further experienced embarrassment, shame, anxiety and revulsion at having contracted herpes from Defendant. Further, upon information and belief, Plaintiff's health has thereby now been compromised as a result of an increased risk of cervical cancer, meningitis, encephalitis, shingles and other medical conditions related to contracting herpes. Plaintiff has further been damaged

by having to monitor the condition, attend additional doctors' appointments, take prescription medications, all to her physical, emotional and financial detriment.  Plaintiff's prospect of enjoying a full and healthy sexual life has been compromised and substantially diminished, as has her prospect of entering into a future marriage, or a personal or sexual relationship.  Plaintiff also suffers the prospect of herpes-related stigma not only in her personal life but also in her profession and business relationships.

58.     As a result of being raped by Defendant, Plaintiff has suffered further physical and mental distress.  Plaintiff has further experienced embarrassment, shame, anxiety and revulsion at having been raped by Defendant.

59.     Plaintiff alleges that her claims contained herein have been brought within the applicable statutes of limitations as this litigation was commenced within the time allowed by law once Plaintiff knew or in the exercise of reasonable diligence should have known that Plaintiff's injury was caused by or related to the aforesaid acts and/or omissions of Defendant.

### First Cause of Action

### (Assault and Battery; Rape)

60.     Plaintiff incorporates herein by reference each and every allegations of Paragraphs 1 through 59 above as though set forth fully herein verbatim.

61.     Late on October 14, 2018 or early October 15, 2018, in Oxnard, California, Defendant physically forced Plaintiff to engage in rough unprotected sexual intercourse against her will and over her verbal protests and physical efforts to resist him.

62.     As a proximate cause of the intentional, offensive and harmful contact, Plaintiff has suffered injury, damage, loss and harm to her body and mind.  Plaintiff has suffered pain and

vaginal tears, embarrassment and anxiety as a result of the personal invasion, humiliation, inconvenience and financial expense associated with past and continued treatment and medication, and emotional stress as a result of now having been raped.

63. The aforesaid actions of Defendant were neither justified nor done with the knowing and informed consent of Plaintiff.

64. The aforesaid actions of Defendant were intentional and malicious.

65. As a result of said actions, Plaintiff suffered physical injuries.

66. As a result of said assaults, Plaintiff suffered loss of time from work.

67. As a result of said assaults, Plaintiff has suffered extreme emotional distress necessitating psychiatric treatment, which treatment remains ongoing.

68. As a result of Defendant's wrongful acts and omissions, Plaintiff has incurred lost income and medical expenses and will incurred additional expenses in the future as Plaintiff's health has been permanently impaired.

69. As a result Defendant's actions, Plaintiff has have suffered consequential damages including personal injury, pain and suffering, and emotional harm and distress.

70. As a result of Defendant's actions, Plaintiff has and will continue to suffer irreparable harm.

71. As a result of Defendant's offensive, unlawful and harmful contact, Plaintiff has been additionally damaged in an amount according to proof at time of trial, but in an aggregate amount believed to be in excess of $75,000.00.

72. By reason of the foregoing, Defendant has acted with wrongful intent, malice, fraud and/or oppression, and an award of punitive damages in a sum according to proof at trial is justified, warranted and appropriate.

**Second Cause of Action**

**(Assault and Battery; Sexual Imposition)**

73.     Plaintiff incorporates herein by reference each and every allegations of Paragraphs 1 through 72 above as though set forth fully herein verbatim.

74.     On or about June 22, 2018, Plaintiff and Defendant first engaged in sexual intercourse, and on every occasion thereafter that the parties engaged in sexual intercourse, Defendant was infected with, and knew he was infected with, the incurable venereal disease, herpes.

75.     Each such occasion the parties engaged in consensual sexual intercourse represents a separate and distinct assault by Defendant upon Plaintiff.

76.     Defendant had an affirmative duty to abstain from sexual conduct or, at a minimum, to warn any person with whom he expected to have sexual relations of his being infected with herpes.

77.     Furthermore, it was unlawful for Defendant to have sexual contact with Plaintiff knowing that the sexual contact was offensive to Plaintiff by reason of his being infected with herpes.

78.     Contact causing infection with an incurable venereal disease would be harmful or offensive to a reasonable person.

79.     Such contact as aforesaid was offensive and harmful to Plaintiff.

80.     Nonetheless, Defendant knowingly and intentionally engaged in sexual intercourse with Plaintiff on multiple occasions, having knowledge each time that he was infected with herpes.

81.     Indeed, rather than informing Plaintiff of his infection, Defendant actively lied about and hid the fact that he was infected with herpes.

82.     As a direct result of said sexual contact with Defendant, Plaintiff was infected with herpes.

83.     The aforesaid actions of Defendant were neither justified nor done with the knowing and informed consent of Plaintiff.

84.     The aforesaid actions of Defendant were intentional and malicious.

85.     As a result of said actions, Plaintiff suffered physical injuries.

86.     As a result of said assaults, Plaintiff suffered loss of time from work.

87.     As a result of said assaults, Plaintiff has suffered extreme emotional distress necessitating both past and ongoing psychiatric treatment.

88.     As a result of Defendant's wrongful acts and omissions, Plaintiff has incurred lost income and medical expenses and will incurred additional expenses in the future as Plaintiff's health has been permanently impaired.

89.     As a result Defendant's actions, Plaintiff has suffered consequential damages including personal injury, pain and suffering, and emotional harm and distress as well as social stigmatization.

90.     As a result of Defendant's actions, Plaintiff has and will continue to suffer irreparable harm.

91.     As a result of Defendant's offensive and harmful contact, Plaintiff has been damaged in an amount according to proof at time of trial, but which is presently believed to be in excess of $750,000.00.

92.     By reason of the foregoing, Defendant has acted with wrongful intent, malice, fraud and/or oppression, and an award of punitive damages in a sum according to proof at trial is justified, warranted and appropriate.

## Third Cause of Action

### (Intentional Infliction of Emotional Distress)

93.     Plaintiff incorporates herein by reference each and every allegation of Paragraphs 1 through 92 above as though set forth in full herein verbatim.

94.     Plaintiff is informed and believes and thereby alleges that Defendant, as an intimate partner, owed a legal duty to use ordinary care to prevent injury to her.

95.     Defendant breached that duty, intentionally and with reckless disregard for the probability that severe injury would result by his conduct in: (a) engaging in unprotected sexual intercourse with Plaintiff and from his failure to advise Plaintiff that he was infected with herpes and as otherwise alleged above; and (b) physically forced Plaintiff to engage in rough unprotected sexual intercourse against her will on or about October 14, 2018.

96.     The above-referenced conduct of Defendant was intentional, outrageous and beyond the bounds of decency such that no reasonable person could be expected to endure it. As a result of contracting herpes from Defendant, Plaintiff was forced to endure physical pain, mental anguish, shock, humiliation, feelings of helplessness and desperation. Plaintiff was physically and emotionally abused by Defendant.

97.     At all relevant times herein, Defendant not only knew he was infected of herpes, and knew or should have known that he could infect Plaintiff with herpes, but took affirmative and illegal steps to conceal this knowledge from Plaintiff. Upon information and belief,

Defendant also know that he could infect Plaintiff with herpes whether or not he was having an active outbreak of herpes. Upon information and belief, Defendant knew that herpes was contagious and incurable. Upon information and belief, Defendant knew that herpes could be prevented, at least in large part, by the use of condoms during sexual intercourse. Defendant acted intentionally and with conscious failure to avoid injury to Plaintiff by engaging in sexual relations with Plaintiff knowing he was infected with herpes and by failing to warn Plaintiff of the potential risks to her health.

98.     Defendant further inflicted severe emotional distress on Plaintiff when he raped her on or about October 14, 2018.

99.     As a result of Defendant's conduct, Plaintiff was forced unnecessarily to endure physical injury and pain, mental anguish, shock, humiliation, feelings of helplessness and desperation.

100.    As a direct and proximate result of the intentional, malicious, harmful, unlawful and offensive acts of Defendant, as aforesaid, Plaintiff sustained severe and serious injury to her person, including but not limited to having contracted a contagious and incurable venereal disease, suffered an increase in the risk of contracting cervical cancer and other serious medical conditions. Plaintiff has otherwise suffered severe emotional distress and anxiety as a direct and proximate result of the aforesaid acts of Defendant. Said injuries are all to Plaintiff's damage in a sum within the jurisdiction of this court and to be shown according to proof, but in an aggregate amount believed to be in excess of $750,000.00.

101.    By reason of the foregoing, Defendant has acted with wrongful intent, malice, fraud and/or oppression, and an award of punitive damages in a sum according to proof at trial is justified, warranted and appropriate.

## Fourth Cause of Action

### (Fraud/Concealment/Misrepresentation)

102. Plaintiff incorporates herein by reference each and every allegation of Paragraphs 1 through 101 above as though set forth in full herein verbatim.

103. Plaintiff is informed and believes that on or about June 16, 2018, Defendant had actual knowledge that he was infected with herpes. Defendant knew or should have known he had a duty to inform Plaintiff he was infected with herpes, prior to engaging in sexual intercourse with her. Defendant had a duty to Plaintiff as an intimate partner to advise and warn her prior to engaging in sexual relations that he was, in fact, infected with herpes.

104. Defendant concealed that fact from Plaintiff and engaged in sexual intercourse with Plaintiff without informing her he was infected with herpes. As a result of said concealment, Plaintiff engaged in sexual relations with Defendant, having no knowledge of his infection with herpes.

105. In engaging in sexual relations with Plaintiff without advising her of his infection with herpes, Defendant breached his duty to disclose said facts to Plaintiff.

106. Defendant breached said duty with the intent of misleading Plaintiff so that she would engage in sexual intercourse with him.

107. Plaintiff relied on Defendant to be direct and frank with her, and relied on Defendant's prior assurances that he was an honest man, that he wanted to marry her, that he loved her and that he would never lie to her and that "he would protect her heart".

108. Plaintiff reasonably relied on Defendant's assertions of honesty and openness to truthfully share important health and sexual information with her prior to engaging in sexual intercourse together.

20

109.     As a result of Plaintiff's reasonable reliance on Defendant's prior assertions and in reliance on Defendant's failure to inform her that he had herpes, Plaintiff engaged in sexual intercourse with Defendant.

110.     As a proximate cause and legal result of the concealment as alleged, Plaintiff was damaged physically and mentally by contracting herpes from Defendant.

111.     By reason of the foregoing Plaintiff has suffered in body and mind, and is entitled to compensatory damages in an amount to be proven at trial.

112.     By reason of the foregoing, Defendant has acted with wrongful intent, malice, fraud and/or oppression, and an award of punitive damages in a sum according to proof at trial is justified, warranted and appropriate.

### Fifth Cause of Action

### (Forgery/Document Tampering)

113.     Plaintiff incorporates herein by reference each and every allegation of Paragraphs 1 through 112 above as though set forth in full herein verbatim.

114.     Defendant, with purpose to defraud or knowingly facilitate a fraud, altered or forged the aforesaid Original Baum Report by creating the aforesaid Altered Report without the consent of the issuing laboratory or otherwise without the privilege to do so.

115.     Defendant, with purpose to defraud or knowingly facilitate a fraud, altered or forged the aforesaid Altered Report so that it purported to be genuine when it actually was spurious with terms, significant information and results different from what in fact was the case.

116.     Defendant, with purpose to defraud or knowingly facilitate a fraud, uttered and/or offered the aforesaid falsified blood test report to Plaintiff with the representation that said report was accurate knowing it had been altered or forged.

117.    By reason of the foregoing, Defendant has acted with wrongful intent, malice, fraud and/or oppression, and an award of punitive damages in a sum according to proof at trial is justified, warranted and appropriate.

## Sixth Cause of Action

### (Wire Fraud)

118.    Plaintiff incorporates herein by reference each and every allegation of Paragraphs 1 through 117 above as though set forth herein verbatim.

119.    Defendant knowingly devised a scheme to intentionally misrepresent the status of his health and defraud Plaintiff as alleged herein.

120.    As a part of said scheme to defraud, Defendant knowingly transmitted to Plaintiff by a telecommunications device or service the aforesaid false Altered Report with the continuing purpose to intentionally make false representations to Plaintiff and to thereby defraud Plaintiff.

121.    By reason of the foregoing, Defendant has acted with wrongful intent, malice, fraud and/or oppression, and an award of punitive damages in a sum according to proof at trial is justified, warranted and appropriate.

## Seventh Cause of Action

### (Punitive Damages)

122.    Plaintiff incorporates herein by reference each and every allegation of Paragraphs 1 through 121 above as though set forth in full herein verbatim.

123.    The conduct of Defendant was intentional, malicious and so reckless, deliberate and outrageous as to be beyond all bounds of decency.

124.    As a direct and proximate result of the intentional, reckless, malicious and outrageous, harmful, unlawful and/or offensive acts of Defendant, as aforesaid, Plaintiff

sustained severe and serious injury to her person. Plaintiff has further suffered severe emotional distress and anxiety. Said injuries are all to Plaintiff's damage in a sum within the jurisdiction of this court and to be shown according to proof.

125. By reason of the foregoing, an award of punitive damages in a sum according to proof at trial is justified, warranted and appropriate.

WHEREFORE, the Plaintiff prays for judgment against the Defendant as follows:

a.  For compensatory damages in an amount to be proven at trial but not less than $750.000.00;

b.  For general damages otherwise within the jurisdiction of this court;

c.  For punitive damages to the full extent permitted by law;

d.  For reasonable attorney's fees as permitted by law;

e.  For court costs;

f.  For accruing interest; and

g.  For such other and further relief as the court may deem just and proper.

Respectfully submitted,

s/ G. Ian Crawford
G. Ian Crawford (Ohio Reg. No. 0019243)
Crawford & Lowry, LLC
116 Cleveland Ave. NW, Suite 800
Canton, OH 44702
Phone: 330-452-6773
Fax: 330-452-2014
Email: icrawford@crawford-lowry.com
*Attorney for Plaintiff*

## **JURY DEMAND**

Now comes the Plaintiff and respectfully requests a trial by jury on all issues raised herein.

s/ G. Ian Crawford
G. Ian Crawford
*Attorney for Plaintiff*